# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSEPH SHEHAN,
    *Plaintiff,*

    v.

WARDEN BARRONE,[1] ET AL.
    *Defendants.*

No. 3:22cv879 (OAW)

## INITIAL REVIEW ORDER

The plaintiff, Joseph Shehan, is a sentenced inmate[2] who was housed at MacDougall-Walker Correctional Institution ("MacDougall") in the custody of the Department of Correction ("DOC") for the period relevant to this action. ECF No. 1 at 2. Plaintiff's complaint alleges violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution against MacDougall Warden Barone, Lieutenant Amaral, Correction Officers Faba and John Doe,[3] and Administrative Captain Flemming. Id. at 1. He also asserts state law claims. He seeks damages, a declaratory judgment, and injunctive relief against Defendants in their individual and official capacities. *Id.*

---

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The court takes judicial notice of the publicly-available information on the Connecticut Department of Correction website, which shows that Kristine Barone served as the warden of MacDougall-Walker Correctional Institution from 2019 to 2022. *See* "*MacDougall-Walker Correctional Institution*," available at https://portal.ct.gov/DOC/Facility/MacDougall-Walker-CI (last visited October 16, 2020). In this order, the court refers to this defendant as Defendant Barone and will instruct the clerk to correct the court docket to reflect this spelling.

[2] Publicly-available information shows that Plaintiff was sentenced on December 6, 2004, to a term that has not yet expired. *See* "*Connecticut State Department of Correction: Inmate Information*," available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=170107 (last visited October 16, 2022).

[3] Plaintiff's case caption refers to a John Dow but he lists John Doe as a defendant in the body of his complaint. *See* ECF No. 1 at ¶ 5. Accordingly, the court hereinafter refers to Defendant John Doe.

For the following reasons, the court will permit Plaintiff to proceed on some of his claims of Eighth Amendment violations and on a state law claim of recklessness.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations[4]

On January 24, 2022, Plaintiff was in the MacDougall H-2 housing unit on the bottom tier for a period of quarantine.  ECF No. 1 at ¶ 10.  Each inmate was permitted a fifteen-minute telephone call.  *Id.*

At some point, Defendant Faba had ordered inmate Ayala, who was housed on the top tier, to stop banging on the wall because his downstairs "neighbors" were complaining.  *Id.* at ¶ 18.  Among prison inmates, such complaints would be considered "snitching."  *Id.* at ¶ 19.

Between 4:00 and 6:00 p.m., Defendants Faba and Doe were in the control bubble and witnessed a verbal confrontation between Plaintiff and Ayala.  *Id.* at ¶ 11.  During the altercation, threats were made and Ayala accused Plaintiff of being a snitch.  *Id.*; *see also* ECF No. 1-9 at 2–3 (displaying a grievance denied by Defendant Barone).  Defendants Faba and Doe were present during meal time when Ayala called Plaintiff a snitch and a rat, and told Plaintiff to "suck his penis," pack his property, and leave the housing block "or else."  ECF No. 1 at ¶ 20. [5]

---

[4] All factual allegations are drawn from the complaint and considered to be true. Plaintiff also has filed exhibits in support of his allegations.  The court refers to such documents for clarification.
[5] It is unclear whether Plaintiff's complaint describes a single incident or two separate verbal altercations witnessed by Faba and Doe.

Between 9:00 and 9:15 p.m., Ayala was let out to use the telephone. *Id.* at ¶ 12. Ayala should have been returned to his locked cell after his telephone call by 9:15 because the block was on quarantine. *Id.* at ¶ 21.

Plaintiff's cell door was opened for medication at 9:15 p.m. by Defendant Doe. *Id.* at ¶¶ 22-23. Ayala was waiting at Plaintiff's cell door when the cell door was opened. *Id.* at ¶¶ 14-15, 24. Ayala threw an object into the cell and hit Plaintiff's right eye, ran into the cell, and attacked Plaintiff. *Id.* at ¶¶ 15, 25-26. Defendant Faba called a "code blue" while he held the cell door closed with his foot and body, which prevented Plaintiff from exiting to avoid his attacker. *Id.* at ¶¶ 16, 27, 29.

Ayala fractured Plaintiff's nose and his right eye and caused Plaintiff to need stitches on his lip and chin and under his eye. *Id.* at ¶¶ 17, 31-32. Plaintiff lost a front tooth and his dentures were broken. *Id.* He had to go to the emergency room and later was put under medical observation in the hospital ward for fifteen days. *Id.* at ¶¶ 17, 31, 33.

As a result of the attack, Plaintiff has facial scarring, vision loss, nerve damage, dental issues, and psychological damage. *Id.* at ¶ 15. He experiences fear whenever he looks into the mirror and sees his facial and dental injuries. *Id.* He is now startled whenever he hears a cell door open. *Id.*

Defendant Faba issued a disciplinary report to Plaintiff for fighting. *Id.* at ¶ 34. Plaintiff pleaded not guilty after seeing the disciplinary report investigator, Officer Reyes. *Id.* at ¶ 35. After his review of the camera footage, Officer Reyes canceled the disciplinary report and charged Ayala with assault using a weapon. *Id.* at ¶ 36.

After Plaintiff left the hospital ward, he requested that the video footage of the assault be preserved.  *Id.* at ¶ 41.  Plaintiff previously had not made such a request because he had been unable to focus his thoughts due to pain and head trauma.  *Id.* at ¶ 42.

Defendant Flemming denied Plaintiff's request for preservation of the assault video footage because Plaintiff had not made his request within fourteen days of the assault as required under DOC Administrative Directive 6.9.  *Id.* at ¶ 37.  He stated that Plaintiff could have requested a pen and paper while he was under medical observation.  *Id.* at ¶ 38.  Defendant Barone later denied Plaintiff's Level-One Grievance complaining about Captain Flemming's decision to deny his request for video preservation.  *Id.* at ¶ 39; *see also* ECF No. 1-10.  Plaintiff explained to both Defendants Flemming and Barone that he had been recovering from head trauma during the fourteen-day period. *Id.* at ¶ 42.

Plaintiff later filed an appeal seeking the DOC Commissioner to make an exception to the fourteen-day requirement.  *Id.* at ¶ 43; *see also* ECF No. 1-10.   This request also was denied.  *Id.*

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner

complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and providing the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.  The complaint must assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Id.*  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555–57.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.    DISCUSSION

"It is well settled in this circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

### A.    Eighth Amendment Deliberate Indifference to Health and Safety

Plaintiff alleges that Defendants Faba, Doe, Amaral, and Barone acted with deliberate indifference to the risk of harm posed by Ayala.

The Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). Prison conditions that "involve the wanton and unnecessary infliction of pain" constitute cruel and unusual punishment under "the Eighth Amendment, which is applicable to the States

6

through the Fourteenth Amendment." *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981) (internal quotation marks and citation omitted).  Conditions of confinement that are merely "restrictive or even harsh," however, do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.* at 347.

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate is required to demonstrate an objective element and a subjective element.  To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a sufficiently serious deprivation of a life necessity or a human need, or that posed a substantial risk of serious harm to his health or safety.  *Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347.

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837.  Thus, the defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  *Id.* at 837.  An allegation of "deliberate indifference entails something more than mere negligence," though a plaintiff need not establish that the defendants intentionally caused a foreseeable harm.  *Id.* at 835.  The subjective element requires the inmate to allege that the defendants acted with the mental state equivalent to "subjective recklessness" as that term is used in criminal law.  *Id.* at 840–41.  In the context of failure-to-protect claims arising from inmate-on-inmate

violence, a plaintiff may satisfy the subjective prong by alleging that the defendants were aware of past aggression toward the plaintiff by the assailant or specific threats made against the plaintiff by the assailant. *See White v. Gutwein*, No. 20-CV-4532 (NSR), 2022 WL 2987554, at *4 (S.D.N.Y. July 28, 2022).

Plaintiff asserts that Defendants Faba, Doe, and Amaral acted with indifference to his safety by not addressing the threats by Ayala prior to the attack. ECF No. 1 at ¶ 45. He alleges further that Defendant Flemming violated his Eighth Amendment rights by denying his request for video preservation requests and that Defendant Barone violated his Eighth Amendment rights by denying his grievances.

<u>Defendants Faba and Doe</u>

Plaintiffs claims that Defendant Faba was deliberately indifferent to his safety by suggesting to Ayala that Plaintiff was a snitch, enabling Ayala to attack Plaintiff in his own cell, and preventing Plaintiff's exit from the cell. *Id.* at ¶¶ 46-47, 49. Plaintiff maintains that Defendant Doe witnessed Ayala's threats to Plaintiff but still opened Plaintiff's cell door when Ayala was standing outside the door. *Id.* at ¶ 48.

For purposes of initial review, Plaintiff has sufficiently alleged that Defendants Faba and Doe were aware that Ayala posed a serious risk of harm to Plaintiff, but they acted with reckless disregard for that harm by failing to take any measures to prevent Ayala's access to Plaintiff. In addition, "a number of courts have found an Eighth Amendment violation where a guard publicly labels an inmate as a snitch, because of the likelihood that the inmate will suffer great violence at the hands of fellow prisoners." *Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018). Thus, Plaintiff may also proceed on his

deliberate indifference claim against Defendant Faba arising from his alleged communication with Ayala indicating that Plaintiff was a snitch.

Accordingly, Plaintiff plausibly has alleged Eighth Amendment claims of deliberate indifference against Defendants Faba and Doe in their individual capacities.

Defendant Amaral

Plaintiff's complaint indicates that Defendant Amaral was made aware of Ayala's threat to Plaintiff but did not take the threats seriously and failed to take any remedial measure to separate Plaintiff from Ayala.  ECF No. 1 at ¶ 50.[6]  For initial pleading purposes, the court will permit Plaintiff's Eighth Amendment claim to proceed against Defendant Amaral in his individual capacity for further development of the record.

Defendant Barone

Plaintiff claims that Defendant Barone violated his Eighth Amendment rights by denying his grievance, which complained about the staff's failure to protect him from Ayala's assault and sought the name of Defendant Doe. *See* ECF No. 1-9 at 2.  However, Plaintiff cannot hold Defendant Barone liable for an Eighth Amendment violation on the basis of her position as a supervisory official.  *See Tangreti*, 983 F.3d at 620 ("for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.").  No allegations suggest that Defendant Barone was aware that inmate Ayala posed a substantial risk of harm to

---

[6] Plaintiff's attached exhibits include an incident report written by Defendant Amaral indicating that correctional staff informed him after the assault that the assault "occurred due to trash talking in the unit and inmate [Ayala] calling inmate Shehan a snitch[.]" ECF No. 1-3 at 2.  Plaintiff's exhibits also suggest that Defendant Amaral took certain actions in response to the report of the assault.  *Id.* at 2, 6–7; ECF No. 1-4 at 4.  In addition, the Shift Commander Overview form shows that Ayala was transferred out of Plaintiff's housing unit after the incident in question.  ECF No. 1-4 at 3.

Plaintiff but failed to take any remedial measures.  At present, the record reflects that Defendant Barone learned about Ayala's threats and aggression through Plaintiff's grievance after the assault.  Accordingly, Plaintiff's Eighth Amendment claim against Defendant Barone must be dismissed as not plausible.

Defendant Flemming

Plaintiff complains that Defendant Flemming acted with deliberate indifference in violation of the Eighth Amendment when he denied Plaintiff's request for video preservation.

Plaintiff has not, however, alleged facts suggesting that Defendant Flemming's denial of the video preservation request resulted in a serious deprivation of a basic human need or posed a substantial risk of serious harm to his health or safety.  Further, there are no facts to suggest that Defendant Flemming was aware that his conduct posed a substantial risk of serious harm to Plaintiff.  Accordingly, Plaintiff's Eighth Amendment claim based on denial of his video preservation request must be denied as not plausible.

**B.   Eighth Amendment Misuse of Force**

Plaintiff appears to assert Eighth Amendment excessive force claims based on Defendants Faba's and Doe's conduct.

An inmate alleging excessive force in violation of the Eighth Amendment has the burden of establishing both an objective and subjective component to his claim.  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).  A *de minimis* use of force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant to the conscience of mankind."  *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson v. McMillan*, 503 U.S. 1, 9–10) (internal quotation marks omitted).  However, it is the force used, not the

injury sustained, that "ultimately counts."  *Id.*  A malicious use of force with the intention

to cause harm constitutes a *per se* Eighth Amendment violation because "contemporary

standards of decency are always violated."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d

Cir. 1999) (citing *Hudson*, 503 U.S. at 9).  The extent of the inmate's injuries as a result

of the defendant's conduct is not a factor in determining the objective component.  *See*

*Wilkins,* 559 U.S. at 37 (stating that the "core judicial inquiry" is "not whether a certain

quantum of injury was sustained," but rather whether unreasonable force was applied

given the circumstances); *Hudson*, 503 U.S. at 9 ("When prison officials maliciously and

sadistically use force to cause harm, contemporary standards of decency are always

violated.").

The subjective component requires the inmate to show that the prison officials

acted wantonly and focuses on "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*,

503 U.S. at 7.  The court considers factors including "the need for application of force, the

relationship between that need and the amount of force used, the threat reasonably

perceived by the responsible officials, and any efforts made to temper the severity of a

forceful response."  *Id.*

Plaintiff has not alleged facts reflecting that any defendant intentionally used

physical force against him.  Plaintiff's allegations about Defendants Faba's and Doe's

conduct raise Eighth Amendment failure to protect claims based on deliberate

indifference but do not suggest that these Defendants maliciously or sadistically applied

physical force to cause him harm.  The court dismisses Plaintiff's Eighth Amendment

excessive force claims as not plausible.

### C.      Fourteenth Amendment Due Process Violation

Plaintiff appears to assert claims of Fourteenth Amendment due process violations against Defendants Flemming and Barone for denying his request for video preservation and for denying his grievances, respectively.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property."  U.S Const. amend. XIV.  In determining whether an incarcerated individual has stated a procedural due process claim, a court "first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

Plaintiff cannot allege a plausible Fourteenth Amendment claim based on the denial of either his video preservation requests or his grievances.  Even assuming that Defendants failed to comply with prison regulations or directives,[7] that failure does not constitute a basis for relief under Section 1983 because "violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983."  *Fine v. UConn Med.*, 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019).  Further, the failure to preserve video footage is not a violation of due process.  *See Braun v. Sterno*, No. 3:18-CV-919 (JCH), 2018 WL 5778248, at *6 (D. Conn. Nov. 2, 2018) (dismissing such a claim as a matter of state law to be raised in the context of discovery, stating "[t]he court is not aware of any precedent recognizing spoliation as a valid due process claim for purposes of a section 1983 action.").

---

[7] And it is not clear this is the case; it appears from the complaint that Defendants exhibited too strict an *adherence* to prison regulations.

Likewise, "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (alterations omitted); *see also Schlosser v. Manuel*, 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) (stating that a claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right") (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018)). Accordingly, the court must dismiss as not plausible Plaintiff's Fourteenth Amendment due process claims based on the denial of his video preservation requests and his grievances.

### D.    Official Capacity Claims

Plaintiff has asserted claims for declaratory and injunctive relief.  To the extent Plaintiff seeks monetary damages against Defendants, who are state employees, in their official capacities, such claims are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  The Eleventh Amendment also bars any claims against state employee defendants for violation of state law in their official capacities. *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) (finding that state claims against defendants in their official capacities are barred under the Eleventh Amendment).

Plaintiff may proceed against Defendants in their official capacities only to the extent that he seeks prospective relief for an ongoing violation of federal law.  *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also In re  Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[A] plaintiff may sue a state official acting in his official capacity— notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from

violations of federal law.").  When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury."  *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). The *Ex parte Young* exception to Eleventh Amendment immunity, which holds that state officials cannot use the Eleventh Amendment to avoid compliance with federal law, "does not permit judgments against state officers declaring that they violated federal law in the past."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Plaintiff has not, however, alleged any ongoing federal violation.  Plaintiff asks the court to issue declaratory judgments stating that Defendants have violated his constitutional rights based on their past conduct.  *See* ECF No. 1 at 11-13.  Similarly, Plaintiff's request for the court to order the DOC to provide him with new dentures and provide timely medical treatment for his injuries seeks relief for alleged violations of his constitutional rights in the past.[8]  Accordingly, Plaintiff's claims against Defendants in their official capacities are not plausible and must be dismissed.

### E.    State Law Claims

This court can exercise supplemental jurisdiction over a state law claim if: (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal

---

[8] Plaintiff does not assert any claims based upon any alleged delay in providing him with medical care to treat the injuries he sustained in Ayala's attack.

claims derive from a common nucleus of operative fact.  *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds; *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Thus, if Plaintiff asserts state law claims that derive from the same factual predicate as his plausible Eighth Amendment claims, the court may exercise supplemental jurisdiction over any plausible state law claims that do not raise a novel and complex issue of state law.  *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raise[s] a novel or complex issue of State Law....").

Plaintiff's complaint asserts state law claims of assault and battery, negligence, equitable estoppel, excessive force and deliberate indifference.

As an initial matter, deliberate indifference constitutes a constitutional violation but is not stand-alone common law tort under Connecticut law.  *See Kaminski v. Milling*, No. HHBCV145016058S, 2015 WL 9809795, at *2 (Conn. Super. Ct. Dec. 23, 2015) ("Connecticut has yet to recognize a common-law tort for deliberate indifference."). Similarly, the court has found no case in which a Connecticut court recognized a common law tort of excessive force; excessive force claims appear to be most analogous to assault and battery claims under state law.  *Sinon v. Town of Wolcott*, No. NNHCV116023483S, 2015 WL 9948204, at *4 (Conn. Super. Ct. Dec. 31, 2015) (noting that granting summary judgment on excessive force claim resolved plaintiff's assault and battery claim under state law).  Thus, the court dismisses Plaintiff's state law claim of excessive force as duplicative, but construes his state law claim of deliberate indifference as asserting recklessness.  The court proceeds to consider the plausibility of Plaintiff's state law claims of assault and battery, negligence, recklessness, and equitable estoppel.

15

### 1.    Assault and Battery

Under Connecticut law, "[l]iability for battery arises if . . . [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . a harmful contact with the person of the other directly or indirectly results."  *Robles v. Dean*, No. FBTCV156048792, 2017 WL 951404, at *5 (Conn. Super. Ct. Jan. 18, 2017) (citing *Simms v. Chaisson*, 277 Conn. 319, 331 (2006)).  "[L]iability for assault arises if . . . [a person] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and . . . the other is thereby put in such imminent apprehension."  *Id.*

Plaintiff has not alleged facts raising an inference that any defendant intended to cause a harmful or offensive contact with him.  Accordingly, the court will dismiss the assault and battery claims as not plausible.

### 2.    Negligence and Recklessness

Connecticut General Statute § 4–165 provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  *Martin v. Brady*, 261 Conn. 372, 379 (2002). Thus, Plaintiff cannot hold the defendants, who are state employees, "personally liable for their negligent actions performed within the scope of their employment."  *Miller v. Egan*, 265 Conn. 301, 319 (2003).

Construed most favorably, Plaintiff's allegations may suggest that Defendants Doe, Faba, and Amaral made the conscious choice to engage in conduct that involved an "extreme departure from ordinary care" in which a "high degree of danger is present." Therefore, Plaintiff's allegations are sufficient to state a plausible claim for damages based on common law recklessness.  *See McAdam v. Federal Express Corp.*, No. HHD-CV-20-6121087-S, 2022 WL 3363872, at *3 (Conn. Super. Ct. Aug. 16, 2022).

Accordingly, the negligence claims are dismissed as not plausible, but the recklessness claims against Defendants Doe, Faba, and Amaral survive initial review.

### 3.    Equitable Estoppel

Plaintiff's claim for equitable estoppel arises from the allegedly wrongful denial by Defendants Flemming and Barone of his request for video preservation.

The court has dismissed these defendants from this action and therefore has discretion either to retain or decline supplemental jurisdiction over a state law claim asserted against a defendant against whom there are no pending federal claims.  *See Kaplan v. Cty. of Orange*, 528 F. Supp. 3d 141, 160–61 & n. 6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims were pending; discussing discretion to do so; and citing cases); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296–308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one named in the federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so.").

However, the court concludes that Plaintiff has not stated a plausible claim for equitable estoppel.  Under Connecticut law, a plaintiff must show that the party against whom estoppel is claimed did or said "something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Celentano v. Oaks Condominium Assn.*, 265 Conn. 579, 614–15, (2003) (citations omitted).  Plaintiff also must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.  *See id.*

Plaintiff's allegations raise no inference that any defendant did or said something to induce his reliance in connection with his request for video preservation or that Plaintiff acted in reliance on a representation by a defendant in connection with his video preservation request.  Nor can Plaintiff claim that he could not have exercised due diligence about the process to request video preservation under Directive 6.9.  Accordingly, Plaintiff's claim of equitable estoppel is dismissed as not plausible.

## IV. CONCLUSION

For the foregoing reasons, the court enters the following orders:

(1) This case may proceed on Plaintiff's Eighth Amendment claims of deliberate indifference against Defendants Doe, Faba, and Amaral in their individual capacities; and on his state law claims of recklessness against Defendants Doe, Faba, and Amaral in their individual capacities.  The claims against Defendants Flemming and Barone are

DISMISSED.  All other claims, including official capacity claims, are DISMISSED without prejudice.

Within **thirty (30) days** from the date of this order, Plaintiff may file an amended complaint to correct the deficiencies identified in this ruling.  Any such amended complaint will completely replace the prior complaint in the action; no portion of any prior complaint shall be incorporated by reference into his amended complaint.

(2)  The clerk is instructed to correct the spelling of Defendant "Barrone" to "Barone."

(3)  The Clerk of Court shall verify the current work address for Defendants Faba and Amaral with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within twenty-one (21) days of this order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.

If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)  The Clerk cannot effect service on a Doe defendant without that defendant's full name and current work address.   Plaintiff is directed to obtain this information regarding the Doe defendant during discovery and to file a notice containing the information with the court.  **Once the Doe defendant has been identified, the court will order that he or she be served with a copy of the amended complaint. Failure to**

**identify the Doe defendant will result in the dismissal of any claim against that defendant.**

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and to the Office of the Attorney General.

(6) The defendants shall file their response to the complaint (either an answer or a motion to dismiss) within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  The defendants also may include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order.  Discovery requests need not be filed with the court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or if the response is not timely, the dispositive motion can be granted absent objection.

(11)  If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He also should notify the defendants or defense counsel of his new address.

(12) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.

(13) Plaintiff is cautioned that the court will not accept submissions in the form of a letter, whether that letter be addressed to the court, to the Clerk of Court, to the judge, or to any other party.  Any letters will be returned to Plaintiff without further review.  To ensure the court's review of all submissions, Plaintiff is instructed to format all filings in the appropriate manner for a motion, with the proper caption at the top of the first page and a clear request for relief.

**SO ORDERED** in Hartford, Connecticut, this 6th day of January, 2023.


_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE